1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8
9
10
11
12
13

| | | |
|---|---|---|
| MICHAEL C. RATLIFF, | ) | 3:07-CV-00219-BES (RAM) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| DIRECTOR SKOLNIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

14   This Report and Recommendation is made to the Honorable Brian E. Sandoval, United

15   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

16   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17   Before the court is Defendants' Motion to Dismiss (Doc. #12).  Plaintiff filed an

18   opposition (Doc. #17), to which Defendants did not reply.  Also before the court is Plaintiff's

19   Declaration for Entry of Default (Doc. #14), which Defendants opposed (Doc. #18).  Also

20   before the Court is Plaintiff's Order to Show Cause for a Preliminary Injunction and a

21   Temporary Retraining Order (Doc. #23).  Defendants filed a Motion to Strike or in the

22   Alternative Opposition to Order to Show Cause for a Preliminary Injunction and Temporary

23   Restraining Order (Doc. #25) and Plaintiff replied (Doc. #27).  Also before the court is

24   Plaintiff's Ex parte Request for: Immediate Temporary Restraining Order and Preliminary

25   Injunction (Doc. #28).

26   The court has thoroughly reviewed the record and motions and recommends that

27   Defendants' motion to dismiss be granted in part and denied in part (Doc. #12).  The court

28   further recommends that Plaintiff's order to show cause  and ex parte request for temporary

1   restraining order and preliminary injunction be denied (Doc. #23, 28).  Plaintiff's declaration

2   for entry of default is denied (Doc. #14).

3                                    **I.  BACKGROUND**

4            Plaintiff is a prisoner at Lovelock Correctional Center (LCC) in Lovelock, Nevada in

5   the custody of the Nevada Department of Corrections (NDOC) (Doc. #7).  Plaintiff brings his

6   compliant pursuant to 42 U.S.C. § 1983, alleging prison officials violated his First Amendment

7   rights by retaliating against him for filing grievances, violated his Fourteenth Amendment

8   right to due process and violated his Eighth Amendment right against cruel and unusual

9   punishment (*Id*.).  Plaintiff names as defendants Director Skolnik, as Director of NDOC;

10  Warden Palmer, as Warden of LCC; Associate Warden LeGrand, as Associate Warden of

11  Operations at LCC; and CCSI Belanger, as Case Worker of Unit #5, Level IV and III at LCC

12  (*Id*.).

13           Plaintiff asserts the instant action is a suit against NDOC[1] and its level system alleging

14  the level system is used as a "punishment orientation system." (*Id*. at 3).  Specifically, Plaintiff

15  alleges the level system is designed to cause "headtrips" for inmates and promote psychological

16  and emotional damage (*Id*.).  Plaintiff further alleges the level system promotes hate and

17  violence between inmates and denies inmates a chance at rehabilitation (*Id*.).  Plaintiff asserts

18  inmates at LCC start out at Level IV even if they were on another level at a different institution

19  and the orientation program is used to divide inmates and cause violence between them (*Id*.).

20  Finally, Plaintiff asserts NDOC officials falsely advance inmates in the level system; in other

21  words, NDOC officials claim inmates are on Level III or below while the inmate actually

22  remains housed in Level IV housing (Doc. #7 at 4).  For these reasons, Plaintiff contends the

23  level system is an illegal system based on punitive behavior modification, which has forced

24  Plaintiff to live in fear and suffer deep depression, anger and aggression (*Id*.).  Plaintiff alleges

25  he is hopelessly stuck in Level IV with no hope of advancement and is forced to violate the

26

27           [1]Although Plaintiff asserts this is a suit against NDOC, Plaintiff has failed to name NDOC as a
     defendant in this action.

28                                              2

1   rules in order to survive, which leaves him completely demoralized with no control over any
2   aspect of his life (Doc. #7 at 4).

3       Plaintiff's First Amended Complaint appears to assert the following causes of action:
4   (1) violation of Plaintiff's Fourteenth Amendment right to Due Process; (2) violation of
5   Plaintiff's Eighth Amendment right against cruel and unusual punishment; and (3) retaliation
6   (*Id.* at 16-18). Plaintiff makes the following requests for relief: (1) abolishment of the level
7   system of behavioral modification; (2) five-hundred (500) dollars per day by each defendant
8   for retaliation; and (3) permanent relief of all named defendants' duties at NDOC (*Id.* at 21).

9                   **II.  DECLARATION FOR ENTRY OF DEFAULT**

10      Plaintiff asserts Defendants failed to file their answer within the forty-five (45) days
11  from the date of the court's June 21, 2007 Order (Doc. #10). The record indicates the court
12  gave Defendants forty-five (45) days to file an answer *or otherwise respond* (Doc. #12) and
13  Defendants timely responded in the form of a Motion to Dismiss (Doc. #12).[2] Furthermore,
14  Plaintiff responded to Defendants' motion by filing an opposition on August 22, 2007.
15  Accordingly, Plaintiff's Declaration for Entry of Default is **DENIED.**

16  **III.  ORDER TO SHOW CAUSE AND EX PARTE REQUEST FOR IMMEDIATE
17        TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

18  **A.    Legal Standard**

19      A fundamental principle of a preliminary injunction is the basic function to preserve
20  the status quo ante litem pending a determination of the action on the merits. *Larry P. v.*
21  *Riles*, 502 F.2d 963, 965 (9th Cir. 1974); *Washington Capitols Basketball Club, Inc. v. Barry*,
22  419 F.2d 472, 476 (9th Cir. 1969); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th
23  Cir.) *cert. denied*, 375 U.S. 821 (1963). In the Ninth Circuit, the moving party must meet one
24  of two tests. "The traditional equitable criteria for granting preliminary injunctive relief are
25  (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to

26
27      [2]Defendants filed their motion forty-seven (47) days after entry of the court's order; however,
    the motion was timely filed because the forty-fifth (45) day fell on a Saturday.

28                                  3

1 plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the

2 plaintiff, and (4) advancement of the public interest (in certain cases).  Alternatively, in this

3 Circuit, the moving party may meet its burden by demonstrating either (1) a combination of

4 probable success on the merits and the possibility of irreparable injury or (2) that serious

5 questions are raised and the balance of hardships tips sharply in its favor.  These [last two

6 criteria] are not separate tests, but the outer reaches 'of a single continuum.'" *Los Angeles*

7 *Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 -1201 (9th

8 Cir. 1980) (internal citations omitted).

9   "The critical element ... is the relative hardship to the parties.  If the balance of harm

10 tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of

11 success on the merits as when the balance tips less decidedly.  No chance of success at all,

12 however, will not suffice." *Benda v. Grand Lodge of Intern. Ass'n of Machinists and*

13 *Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).  At an irreducible minimum, Plaintiff

14 must show that there is a fair chance of success on the merits. *Immigrant Assistance Project*

15 *of Los Angeles County Fed'n of Labor v. Immigration and Naturalization Serv.,* 306 F.3d

16 842, 873 (9th Cir. 2002); *see also Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1994)

17 (quoting *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 674-75 (9th Cir. 1984)).  On the other

18 hand, even if the harm factor favors the nonmoving party, a preliminary injunction may still

19 be granted if the moving party can show a strong likelihood of success on the merits.

20 *Immigrant Assistance Project,* 306 F.3d at 873.

21   For some requested preliminary injunctions, the moving party has an even heavier

22 burden.  This heightened burden applies when the preliminary injunction would "(1) disturb

23 the status quo, (2) [is] mandatory as opposed to prohibitory, or (3) provide[s] the movant

24 substantially all the relief he may recover after a full trial on the merits." *Kikumura v. Hurley,*

25 242 F.3d 950, 955 (9th Cir. 2001).  Where the requested preliminary injunction alters the

26

27

28

1    status quo, the movant will ordinarily find it difficult to meet its heavy burden without

2    showing a likelihood of success on the merits. *Id.*

3    **B.    <u>Discussion</u>**

4            Plaintiff asserts the mail room is depriving him of his privacy rights by opening and

5    reading his legal mail (Doc. #23). Plaintiff contends the officials in the mail room have opened

6    his legal mail on three occasions in order to mentally harass him and retaliate against him

7    (Doc. #23 at 1). Plaintiff also asserts Defendants have moved him to another unit and he no

8    longer has a job, his mail arrives late and there is no airflow (*Id.*). Finally, Plaintiff asserts

9    these living conditions, loss of work time, harassment and abuse of authority have been going

10   on since Plaintiff filed his original complaint (Doc. #23 at 2). Plaintiff requests the court enter

11   an order enjoining Defendants, their successors in office, agents and employees, and all other

12   persons acting in concert and participation with them, from improperly opening his legal mail,

13   harassing him, abusing their authority, and illegally housing him in a unit without proper

14   ventilation (*Id.* at 3). Plaintiff further requests the court order Defendants allow Plaintiff to

15   enjoy the same benefits as other inmates, such as a job and work time credits (*Id.*). Plaintiff

16   also requests the court enter an order to show cause why an injunction should not issue (*Id.*).

17          Defendants argue Plaintiff's order to show cause should be stricken as impertinent,

18   pursuant to Fed. R. Civ. P. 12(f), because Plaintiff has attempted to file new allegations against

19   Defendants (Doc. #25 at 3). In the alternative, Defendants request the court deny Plaintiff's

20   order to show cause because preliminary injunctions are meant to preserve the status quo

21   pending an outcome on the merits and are not meant for new allegations (*Id.* at 1-2).

22   Defendants assert Plaintiff has attempted to file new allegations against Defendants through

23   a preliminary injunction without exhausting his administrative remedies (*Id.* at 3).

24          Plaintiff responds that he has not brought anything new into this civil action and the

25   issues are continuing (Doc. #27 at 1-2). Plaintiff maintains that his status quo is not preserved

26   because of his being moved to various units, which he has had to endure since filing his

27

28                                                      5

1    original complaint (Doc. #27 at 2).  Plaintiff asserts the circumstances are extraordinary

2    because Defendants' actions have continued to date and there are no other remedies (*Id.* at

3    2).  Plaintiff further asserts he is suffering from irreparable injury because he was unable to

4    perform necessary legal research (Doc. #27 at 3).  Finally, Plaintiff asserts the opening of his

5    legal mail is the most outrageous act that shows Defendants will stop at nothing to intervene

6    (*Id.*).

7         Plaintiff also filed an ex parte request for a temporary restraining order and preliminary

8    injunction to inform the court that the law library has refused to give Plaintiff the required

9    five (5) envelopes, limiting him to one (1) letter to the court this month (Doc. #28).  Plaintiff

10   contends he is in dire need of a temporary restraining order and preliminary injunction and

11   an order for "the document"[3] to be copied and sent to the court as evidence (Doc. #28 at 2).

12   **C.    Analysis**

13        Plaintiff contends his requests for a temporary restraining order and preliminary

14   injunction arise out of the same set of facts and circumstances alleged in his First Amended

15   Complaint; however, Plaintiff's requests indicate he is attempting to assert new causes of

16   action against Defendants.  Plaintiff alleges Defendants (and/or NDOC officials not named

17   in this action) improperly opened and read his legal mail, interfered with his access to the

18   courts, housed him in a unit without proper ventilation and denied him legal copy work.

19   These allegations are new conditions of confinement claims and, therefore, require proper

20   exhaustion of administrative remedies.

21

22

23        [3] "The document" Plaintiff is referring to, subsequently sent by Susan Lynch in Los Angeles,
     California, appears to be an Inmate Account Transaction Request form, dated October 9, 2007, in
24   which Plaintiff requested copies he marked as legal copies (Doc. #29 at 5).  A hand-written line is
     marked through the document with the words "NO."  Attached to the request slip is a note informing
25   Plaintiff that he is not entitled to receive copies of the copy and supply request forms, initialed "PB."
     (*Id.* at 4).  Also attached is a hand-written note from Plaintiff to "whom this concerns" stating he was
26   not asking to be given copies because they are charged to his account and stating that he is submitting
     the letter to the court and demanding the copies be made (*Id.* at 2).
27

28                                                          6

1
2
3
4
5
6
7
8
9
10
11
12

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines "proper exhaustion" as "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 2385 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). For prisoners within the NDOC system, exhaustion of administrative remedies includes complying with the grievance procedures set forth in NDOC Administrative Regulation 740 (AR 740). Plaintiff has failed to comply with AR 740; therefore, he has not shown a strong likelihood of success on the merits regarding these claims and the balance of hardships tips sharply in Defendants' favor where they have not been given the full chance to address and correct any internal issues before going to court.

13
14
15
16
17
18
19
20
21
22

Plaintiff also requests the court order Defendants provide Plaintiff access to the same benefits as other inmates, including a job and work time credits. Plaintiff further requests the court enjoin Defendants from harassing Plaintiff and abusing their authority. These are claims contained in Plaintiff's complaint and may be properly asserted in a request for temporary restraining order and preliminary injunction. However, Plaintiff has made no showing of success on the merits. Plaintiff requests both mandatory and prohibitory relief and, therefore, Plaintiff has a heightened burden of showing a likelihood of success on the merits with respect to these claims. Furthermore, the relief requested is essentially all the relief, less monetary damages, Plaintiff may recover after a full trial on the merits. *See Kikumura*, 242 F.3d at 955. Plaintiff has failed to meet his burden.

23
24
25
26
27

For the reasons set forth above, Plaintiff's requests for a temporary restraining order and preliminary injunction should be **DENIED.**

///

///

28

7

1

### IV.  MOTION TO DISMISS

2

**A.     Legal Standard**

3        "A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law."

4   *North Star Inter'l v. Ariz. Corp. Comm.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).

5   In considering a motion to dismiss for failure to state a claim upon which relief may be

6   granted, all material allegations in the complaint are accepted as true and are to be construed

7   in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336,

8   337-38 (9th Cir. 1996) (citation omitted).  For a defendant-movant to succeed, it must appear

9   to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be

10  proven under the allegations of the complaint. *Id.* at 338.  A complaint may be dismissed as

11  a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a

12  cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th

13  Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.

14  1984)).

15       A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed

16  where it appears certain from the complaint that Plaintiff would not be entitled to relief. *Ortez*,

17  88 F.3d at 807.  However, although allegations of a *pro se* complaint are held to a less

18  stringent standard than formal pleadings drafted by lawyer, *Haines v. Kerner*, 404 U.S. 519

19  (1972), sweeping conclusory allegations will not suffice.  *Leer v. Murphy*, 844 F.2d 628, 634

20  (9th Cir. 1988).

21  **B.     Discussion**

22       Defendants move for dismissal, pursuant to FED. R. CIV. P. 12(b)(6), based on the

23  following arguments: 1) states, state agencies and officials acting in their official capacity are

24  not "persons" who can be sued pursuant to § 1983; 2) respondeat superior is not appropriate

25  in civil rights actions; 3) Plaintiff does not have a liberty interest in level advancement

26  sufficient to invoke the procedural due process clause; 4) the level system is not illegal or

27  unconstitutional; 5) Plaintiff has failed to allege all the elements of a retaliation claim; and

28

6) Plaintiff has failed to state a claim for cruel and unusual punishment because his complaint states only vague and conclusory allegations regarding the level system (Doc. #12).

Plaintiff responds with the following arguments: 1) Plaintiff is suing Defendants in their individual and official capacities because they negated their "official" duties by acting outside the scope of their stated duties; 2) Plaintiff's complaint shows each defendant's individual involvement, awareness of the problems and failure to correct the problems; 3) Plaintiff has a liberty interest because there is a right to be free from the unique kind of deprivations of liberty that are components of this punitive form of behavioral modification and the imposition of such a system is arbitrary punishment that is violative of due process; 4) the level system is constitutionally illegal as it violates due process; 5) Plaintiff has sufficiently alleged retaliation in the form of loss of yard time, access to the gym and sports, worktime credits and the ability to make prison funds; and 6) Plaintiff's claims are not conclusory allegations of law, but are clearly cognizable legal facts  (Doc #17).

**C.    Analysis**

1.    Persons Under § 1983

Section 1983 imposes a duty on persons acting under color of state law not to deprive another person "of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1988).  However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989).  "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71, n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).

Defendants assert it is apparent throughout Plaintiff's complaint that he is suing Defendant Skolnik in his official capacity as Director of Corrections and Plaintiff simply checking "individual" and "official" boxes on a form does not save Plaintiff's complaint (Doc.

1    #12 at 3).  Therefore, Defendants assert the district court should dismiss Defendant Skolnik

2    from this suit and, for the same reasons, should also dismiss Defendants LeGrand, Palmer

3    and Belanger (*Id.* at 3-4).  Plaintiff argues he is suing Defendants in both their individual and

4    official capacities and official immunity is not warranted because they negated their "official

5    duties" by acting outside the scope of their stated duties (Doc. #17 at 2).

6          Plaintiff seems to misunderstand the concept of suing Defendants in their official

7    capacities versus personal (individual) capacities.  The Ninth Circuit explained the difference

8    between official and personal capacity suits as follows:

9          The Supreme Court in *Hafer* described the difference between official capacity
10         and personal capacity suits.  "[T]he phrase 'acting in their official capacities' is
           best understood as a reference to the capacity in which the state officer is sued,
11         not the capacity in which the officer inflicts the alleged injury."  An official sued
           in his official capacity has the same immunity as the state, and is entitled to
12         eleventh amendment immunity.  An official sued in his personal capacity,
           although deprived of eleventh amendment immunity, may assert a defense of
13         qualified immunity.

14         Personal-capacity suits ... seek to impose individual liability upon a government
           officer for actions taken under color of state law.  Thus, "[o]n the merits, to
15         establish *personal* liability in a § 1983 action, it is enough to show that the
           official, acting under color of state law, caused the deprivation of a federal
16         right."

17   *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (internal citations omitted) (emphasis

18   in original).

19         In liberally construing Plaintiff's allegations that Defendants negated their "official

20   duties" by acting outside the scope of their stated duties, Plaintiff has properly sued

21   Defendants in their individual capacities alleging Defendants, acting under color of state law,

22   caused the deprivation of his federal rights.  However, a careful review of Plaintiff's First

23   Amended Complaint indicates Plaintiff has improperly sued Defendants in their official

24   capacities with the exception of Defendant Skolnik as Director of NDOC.  Plaintiff requests

25   prospective injunctive relief in the form of permanently relieving Defendants of their official

26   duties at NDOC (Doc. #7 at 21).  Thus, Defendant Skolnik, as the person with the authority

27

28                                                        10

to perform such injunctive relief (with regards to Defendants Palmer, LeGrand and Belanger), would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State. Accordingly, Defendants' request to dismiss Defendant Skolnik from this suit should be **DENIED.**

As to Defendants Palmer, LeGrand and Belanger, although Plaintiff alleges they have abused their authority and retaliated against Plaintiff, Plaintiff's complaint does not appear to request any specific conduct enjoined; rather, Plaintiff simply requests these defendants be relieved of their official duties (*Id.*). Accordingly, Defendants request to dismiss Defendants Palmer, LeGrand and Belanger, *sued in their official capacities*, should be **GRANTED.**

       2.    <u>Respondeat Superior Liability Under § 1983</u>

Liability under § 1983 arises only upon a showing of personal participation by the defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no respondeat superior liability under § 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). Thus, a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor*, 880 F.2d at 1045. In other words, a supervisor may be liable under § 1983 only if there exists either "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (internal citations omitted) (emphasis in original).

Defendants contend that Plaintiff has failed to allege Defendants Skolnik, Palmer and LeGrand were personally involved in the alleged deprivation of Plaintiff's constitutional rights (Doc. #12 at 4-5). Defendants assert that Plaintiff's First Amended Complaint appears to state

1    only that Defendants Palmer and LeGrand formulated lies concerning Plaintiff's level and

2    movement (Doc. #12 at 5).

3        Plaintiff argues Defendant Skolnik repeatedly ignored Plaintiff's grievances and failed

4    to investigate Plaintiff's complaints after his grievances went to Defendant Skolnik personally

5    (Doc. #17 at 3, 9).  Plaintiff also argues that Defendants Belanger and Palmer responded to

6    Plaintiff's grievances and failed to do their duties as described in AR 516 and IP 516-1 (*Id.* at

7    9).  Finally, Plaintiff argues Defendant LeGrand responded to requests and lower level

8    grievances and neglected his duty in abiding by the rules and procedures and Defendants

9    Skolnik, Belanger, Palmer and LeGrand were each informed about the problem and told that

10   if the problem was not corrected through the grievance procedure Plaintiff would submit it

11   to the court for legal review (*Id.* at 9-10).

12       Accepting all material allegations in Plaintiff's complaint as true, Plaintiff has

13   sufficiently pled Defendants were personally involved in the alleged deprivation and/or knew

14   of the violations and failed to act to prevent them.  Plaintiff is not merely suing Defendants

15   Skolnik, Belanger, Palmer and LeGrand on a respondeat superior liability theory; Plaintiff is

16   suing them based on their personal participation.  Accordingly, Defendants request that they

17   each be dismissed based on a theory of respondeat superior should be **DENIED.**

18       3.    Liberty Interest in Level System

19       The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty,

20   or property, without due process of law." U.S. Const. amend. XIV.  Before a prisoner is entitled

21   to the procedural guarantees of the Fourteenth Amendment, he must first have a

22   constitutionally protected  liberty or property interest at stake. *Bd. of Regents v. Roth*, 408

23   U.S. 564, 569 (1972).  Liberty interests can arise both from the Constitution and from state

24   law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-227

25   (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974); *Smith v. Sumner*, 994 F.2d 1401,

26   1405 (9th Cir. 1993).

27

28                                          12

In the prison context, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *Sandin* "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardships caused by the prison's challenged action relative to 'the basic conditions of life as a prisoner.'" *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (quoting *Sandin*, 515 U.S. at 485). *Sandin* reminds the court that they should be circumspect when asked to intervene in the operation of state prisons. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). When conducting an analysis under *Sandin*, the court should look to conditions of confinement that violate the Eighth Amendment, whether the conditions will affect the length of the prisoner's sentence and the duration of those conditions. *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

Plaintiff asserts he has a liberty interest at stake because he has a right to be free from the unique kind of deprivations of liberty that are necessary components of NDOC's level system (Doc. #17 at 6). Plaintiff alleges deprivations of yard time, access to the gym and sports and the ability to make prison funds (*Id.* at 4). Plaintiff has no liberty interest in the loss of these privileges. The Due Process Clause does not create a liberty interest in not losing privileges, *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976), and Nevada law has not created a constitutionally protected liberty interest in yard time, access to the gym and sports or the ability to make prison funds. Furthermore, the loss of said privileges does not impose atypical and significant hardships on Plaintiff relative to the basic conditions of life as a prisoner.

Plaintiff also alleges a deprivation of "work time" credits (*Id.* at 6). The Due Process Clause does not create a liberty interest in work time credits, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), and Nevada law has not created such an interest. State statutes or regulations

1    which create only a possibility of early release do not create a constitutionally protected liberty

2    interest. *See Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985)

3    (possibility of parole creates hope of, not a liberty interest in, early release). Therefore, since

4    NRS 209.433(3) and NDOC Administrative Regulations 714(III) make the granting of work

5    time credits discretionary, they do not create a liberty interest. *See Neal v. Hargave*, 770 F.

6    Supp. 553, 557-558 (D. Nev. 1991); *Cooper v. Sumner*, 672 F. Supp. 1361, 1367 (D. Nev. 1987).

7            Because the level system and the related loss of yard time, access to the gym and sports,

8    ability to make prison funds, and work time credits do not implicate a constitutionally

9    protected liberty interest, Defendants' request that the court dismiss Plaintiff's Due Process

10   claim (Count I) should be **GRANTED.**

11           4.    Unconstitutional Level System

12           The Supreme Court has stated that "simply because prison inmates retain certain

13   constitutional rights does not mean that these rights are not subject to restrictions and

14   limitations. 'Lawful incarceration brings about the necessary withdrawal or limitation of many

15   privileges and rights.'" *Bell*, 441 U.S. at 545-546 (quoting *Price v. Johnston*, 334 U.S. 266, 285

16   (1948)). Thus, the Supreme Court has cautioned that courts should accord prison officials

17   great deference when analyzing the constitutional validity of prison regulations. *Turner v.

18   Safley*, 482 U.S. 78, 84-85 (1987). Furthermore, the issue of deference to prison officials is

19   more acute when state prison officials are defendants in federal court. *Turner*, 482 U.S. at 85;

20   *Royse v. Superior Court*, 779 F.2d 573, 574 (9th Cir. 1986); *Wright v. Rushen*, 642 F.2d 1129,

21   1133 (9th Cir. 1981). However, "[w]hen regulation or practice offends a fundamental

22   constitutional guarantee, federal courts will discharge their duty to protect constitutional

23   rights." *Procunier v. Martinez*, 416 U.S. 396, 405-406 (1974).

24           NDOC uses a level system in order to "establish a standard system of incentives to

25   encourage positive inmate behavior." NDOC Administrative Regulations 516. Plaintiff attacks

26   this level system directly alleging the entire system is unconstitutional (Doc. #7 at 3). Plaintiff

27

28                                                        14

1    asserts the level system is not a security system, but is a punishment system used to control

2    inmates and is designed to cause "headtrips" and promote psychological and emotional

3    damage (*Id.*). Plaintiff also asserts the level system denies inmates a chance at rehabilitation

4    (*Id.*).

5        Plaintiff cites *Canterino v. Wilson*, 546 F. Supp. 174 (W.D. Ky. 1982) to support his

6    contention that the level system is unconstitutional. *Canterino* is distinguishable from the

7    facts of this case, is not binding on this court and does not lend support to Plaintiff's argument.

8    The *Canterino* court found the level system in Kentucky's penal system violated the Equal

9    Protection Clause and the Due Process Clause of the Fourteenth Amendment by imposing

10   restrictions on female inmates in the exercise of privileges allowed to male inmates and by

11   the disparities in opportunity for vocational education and training and jobs. *Id.* The court

12   stated:

13       In reality, the Levels System has been imposed at KCIW because defendants
         have implicitly, if not consciously, decided that women are less capable than
14       men of exercising basic privileges. Women are restricted in the exercise of
         normal privileges-those that could be exercised by all inmates without
15       jeopardizing legitimate correctional needs-while men are not. Thus bedtime,
         personal appearance, access to visits and phone calls and other routine aspects
16       of daily life are curtailed for women because of an exaggerated fear that
         administrative inconvenience would result if female inmates were allowed the
17       same modicum of freedom as male inmates in these areas.

18       These restrictions are imposed solely because of gender with the objective of
         controlling the lives of women inmates in a way deemed unnecessary for male
19       prisoners. This raises questions in terms of constitutional analysis, for as the
         Supreme Court recently held, when a state policy is imposed on "members of
20       one gender because they are presumed to suffer from an inherent handicap or
         to be innately inferior, the objective itself is illegitimate." The Levels System
21       presumes women inmates to be innately inferior to male inmates in the ability
         to responsibly exercise basic, normal institutional privileges.

22
         These restrictions, based on gender and unrelated to any important government
23       objective, violate fundamental notions of fairness embedded in the constitution
         and expressed in the equal protection clause of the fourteenth amendment.

24
     *Canterino*, 546 F. Supp. at 207.

25
         NDOC's level system does not impose gender restrictions, nor does it impose

26
     restrictions unrelated to any important government objective. As stated in the regulation,

27

28                                                    15

1    the objective of the level system is to "establish a standard system of incentives to encourage

2    positive inmate behavior." AR 516.  The level system applies uniformly to all inmates.  In fact,

3    Plaintiff acknowledges "[a]ll inmates, even if at level I at another institution must start out

4    at level #4." (Doc. #7 at 4).  AR 516 expressly provides the following rights are components

5    of any level system and are *not to be abridged*: food, visits, mail, legal access, religious access,

6    access to medical treatment, and visiting (Doc. #12 at 14 (emphasis added)); it further provides

7    the following privileges may be used as incentives: property, appliances, program access,

8    work/pay, yard/tier access, television, phone access, canteen, recreation/gym access, clothing,

9    packages, and work assignments (*Id.* at 14-15).

10       The Supreme Court recognizes the limitation on prisoner's privileges and rights from

11   the need to grant necessary authority and capacity to officials to administer the prisons.

12   *McKune v. Lile*, 536 U.S. 24, 25 (2003).  Plaintiff acknowledges, in his First Amended

13   Complaint, that as an inmate progresses through the level system, he gains privileges (*Id.* at

14   3).  He further acknowledges the purpose of the system is to emphasize positive reinforcement

15   (*Id.*).  Plaintiff points to know specific section of the regulation to support his allegation that

16   the level system is designed to cause "headtrips" and promote psychological and emotional

17   damages.  Thus, Plaintiff has failed to show how NDOC's level system of incentives is

18   unconstitutional.

19       While Plaintiff contends the entire level system is illegal and unconstitutional,

20   Plaintiff's allegations are really focused on NDOC officials' use of the level system rather than

21   the system itself.  Plaintiff essentially alleges Defendants and other NDOC officials advance

22   inmates through the level system as they see fit, rather than as provided for in the regulation,

23   and use the system as a form of punishment rather than a system of incentives.  An official's

24   misuse of the level system does not render the level system, itself, unconstitutional and

25   Plaintiff has pointed to no language in the regulation that deprives Plaintiff of any of his

26   constitutional rights.  Accordingly, even construing all Plaintiff's allegations as true, Plaintiff

27   has failed to plead facts sufficient to show the level system is unconstitutional.

28                                                16

1    Defendants' request dismissal of Plaintiff's entire complaint based on the

2    constitutionality of the level system; however, Plaintiff's claims do not fail simply because the

3    level system passes constitutional muster.  Plaintiff may still assert valid due process, cruel

4    and unusual punishment and retaliation claims against prison officials, despite a

5    constitutional level system, provided he properly pleads the elements of each claim.

6    Accordingly, Defendants' request that Plaintiff's entire complaint be dismissed, based on this

7    argument, should be **DENIED.**

8    The court should note that Plaintiff requests relief in the form of abolishing NDOC's

9    level system based on the allegation that it is unconstitutional.  For the reasons set forth above,

10   this requested relief should be **DENIED.**

11   5.    Retaliation

12   The Ninth Circuit recognizes a claim of retaliation for filing a prison grievance as a valid

13   cause of action under § 1983. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Austin*

14   *v. Terhune*, 367 F.3d 1167, 1170 (9th Cir. 2004).  Retaliation claims for filing prison grievances

15   survive *Sandin* because they raise constitutional questions beyond the due process deprivation

16   of liberty rejected in *Sandin*, as the Supreme Court recognized in a footnote stating prisoners

17   "retain other protections from arbitrary state action.... They may invoke the First and Eighth

18   Amendments and the Equal Protection Clause." *Sandin*, 515 U.S. at 487-488, n.11.  Thus, to

19   succeed on his retaliation claim, Plaintiff need not establish an independent constitutional

20   interest in his level assignment; rather, Plaintiff need only show that "prison authorities'

21   retaliatory action did not advance legitimate goals of the correctional institution or was not

22   tailored narrowly enough to achieve such goals." *Rizzo*, 778 F.2d at 532 (citing *Franklin v.*

23   *Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)).  Plaintiff bears the burden of pleading and

24   proving the absence of legitimate correctional goals for the conduct of which he complains.

25   *Id.*

26   Plaintiff alleges Defendants retaliated against him for filing papers, grievances and legal

27   actions by placing him at the bottom of the level movement list; stating he was moved to the

28

next level when, in fact, he was not; and reducing his level without provocation (Doc. #7 at 16-18). Plaintiff's allegation falls squarely within *Sandin*'s eleventh footnote and *Pratt's* reasoning; the injury asserted is the retaliatory accusation's chilling effect on Plaintiff's First Amendment rights. *Austin*, 367 F.3d at 1171. Although Plaintiff's complaint does not expressly refer to the First Amendment, Plaintiff alleges that he was retaliated against for filing a grievance and legal actions, which is enough under FED. R. CIV. P. 8. Therefore, the inquiry is whether Plaintiff has met his burden of pleading the absence of legitimate correctional goals for Defendants' conduct.

Defendants contend Plaintiff has failed to sufficiently allege that Defendants' actions were not narrowly tailored to advance a legitimate penological objective (Doc. #12 at 8). Plaintiff responds that Defendants failed to follow their own administrative regulations and repeatedly change the rules and give untruthful responses (Doc. #17 at 2-3). Plaintiff further responds that he was moved to "Level IV[4]" write-up free with no disciplinary actions and was left in Level III and/or IV for approximately 6 (six) months without justification, which is contrary to AR 516 (*Id.* at 4, 8). Plaintiff alleges Defendants falsely claim an inmate is on Level III or II while housing the inmate on the "mysterious Level IV." (*Id.* at 4).

Plaintiff has sufficiently pled the absence of a legitimate correctional goal for Defendants' failure to follow AR 516 and advance Plaintiff to Level I after a thirty (30) day orientation period where that was the level he was on when he transferred to LCC. Pursuant to AR 516, "[i]nmates transferred between institutions not involving disciplinary actions or job terminations retain their level assignment upon transfer. Inmates may be required to go through an initial orientation period, *not to exceed thirty (30) days*." AR 516.01.1.3.3 (emphasis added). Defendants do not dispute that Plaintiff was transferred to LCC as a Level I inmate and Plaintiff's transfer did not involve disciplinary actions or job terminations. Thus, under AR 516, Plaintiff was to remain on Level I after, at most, a thirty (30) day orientation

---

[4]There are three level systems under AR 516; however, Plaintiff asserts he was moved to, what he refers to as, Level IV, noting it is not listed in the regulations (Doc #17 at 3-4).

1    period, which under AR 516 is Level III, Orientation (Doc. #7 at 12).  Defendants also do not

2    dispute that Plaintiff was not moved to Level I after the thirty (30) day orientation period.

3        Apparently, Plaintiff remained on Level III and/or IV for approximately six (6) months

4    from January 12, 2007 through June 24, 2007 (Doc. #17 at 5).  Defendants contend Plaintiff

5    was moved to Level II on March 20, 2007, which Plaintiff disputes, and Defendants also

6    contend Plaintiff did not become eligible for Level I until November 20, 2007 (*Id.* at 14-15).

7    There is no evidence in the record of any disciplinary actions during the thirty (30) day

8    orientation period, or since then for that matter, and Defendants do not assert that Plaintiff

9    was not moved to Level I due to disciplinary actions.  In fact, the only reason Defendants

10   proffer for not moving Plaintiff to Level I appears to be that he was simply not eligible and

11   would not become eligible until November 20, 2007, provided he "remained disciplinary free

12   and bed space was available." (*Id.*).  The facts indicate Defendants advanced Plaintiff through

13   the level system as though he were a new offender rather than a transferee from another

14   NDOC institution.  IP 5.16-1 provides the duration for Level III, Orientation is thirty (30) days

15   and the duration for Level II is six (6) months (Doc. #7 at 12).

16       Defendants have provided no explanation or penological justification as to why Plaintiff

17   was not advanced to Level I after completing a thirty-day orientation period per AR 516.

18   Furthermore, Plaintiff appears to have remained in each level even beyond the duration

19   provided in the regulation.  Plaintiff alleges Defendants took these actions in retaliation for

20   Plaintiff filing grievances after he was not advanced to Level I per AR 516.  The record shows

21   Plaintiff filed a grievance, on March 5, 2007, stating the level system was being used for

22   punishment, in which an NDOC official resolved the complaint, unsigned, responding that

23   it was not used as punishment (*Id.* at 14).  Then on March 16, 2007, Plaintiff filed another

24   grievance regarding the level system, in which another NDOC official responded, again

25   unsigned, that Plaintiff was eligible for level advancement on December 10, 2007 and the issue

26   was moot because Plaintiff was already moved (*Id.*).  Finally, on April 16, 2007, Plaintiff filed

27   a Level 2 grievance regarding the level system, in which two NDOC officials responded that

28

19

1   Plaintiff met the requirements of Level II on March 20, 2007 and was moved accordingly and

2   Plaintiff would meet the requirements of Level I on November 20, 2007 if he remained

3   discipline-free and bed space was available (*Id.* at 14-15). The grievances do not refer to AR

4   516, nor do they explain why Plaintiff was not advanced as provided for in AR 516.

5          AR 516 provides for the retention of level assignments for inmates transferred between

6   NDOC institutions where the transfer does not involve disciplinary actions or job terminations

7   and provides for a thirty (30) day orientation period. The language of AR 516 is mandatory,

8   not discretionary and Defendants failed to abide by the mandate. Under these facts, Plaintiff

9   has sufficiently pled that there were no legitimate correctional goals for Defendants' failure

10  to follow the procedures mandated in AR 516 and Defendants proffer no penological

11  justification for the failure to advance Plaintiff as provided in the regulation. Accordingly,

12  Defendants' request that Plaintiff's First Amendment retaliation claim (Count III) be dismissed

13  should be **DENIED.**

14          6.    Cruel and Unusual Punishment

15         The Eighth Amendment prohibits the imposition of cruel and unusual punishment and

16  "embodies broad and idealistic concepts of dignity, civilized standards, humanity and

17  decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations

18  omitted). "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511

19  U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Furthermore,

20  the Eighth Amendment is not a mandate for broad prison reform or excessive judicial

21  involvement. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

22         "It is undisputed that the treatment a prisoner receives in prison and the conditions

23  under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment.

24  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer*, 511 U.S. at 832. Conditions

25  of confinement may be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347

26  (1981); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521,

27  1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with

28                                                    20

1    adequate "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint*

2    *v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *see also Farmer,* 511 U.S. at 832, 114 S.Ct.

3    1970; *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996); *Hoptowit,* 682 F.2d at 1246. Thus,

4    Plaintiff must first demonstrate prison officials deprived him of the "minimal civilized

5    measures of life's necessities." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal

6    citation omitted).

7        An Eighth Amendment claim for cruel and unusual punishment depends on two

8    components – a subjective component and an objective component.  "To violate the Eighth

9    Amendment, the deprivation alleged must *objectively* be sufficiently serious; and the prison

10   official must *subjectively* have a sufficiently culpable state of mind." *Ford v. Ramirez-Palmer*,

11   301 F.3d 1043, 1049 (9th Cir. 2002) (citing *Farmer*, 511 U.S. at 834) (emphasis in original).

12   When determining whether the conditions of confinement meet the objective component, the

13   court must analyze each condition separately to determine whether that specific condition

14   violates the Eighth Amendment. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1462

15   (9th Cir. 1988); *Toussaint*, 801 F.2d at 1107; *Hoptowit*, 682 F.2d at 1246-1247.  The court

16   should also take into consideration the amount of time the prisoner was subjected to the

17   condition. *See Hutto v. Finney*, 437 U.S. 678, 686-687 (1978); *Hoptowit*, 682 F.2d at 1258.

18   Then, when determining whether the official has a sufficiently culpable state of mind to meet

19   the subjective component, the court must analyze whether the prison official acted with

20   "deliberate indifference" to the unconstitutional condition. *See Farmer*, 511 U.S. at 834.

21       Plaintiff asserts he was subjected to the following conditions of confinement under

22   NDOC's level system: 1) loss of yard time; 2) loss of access to the gym and sports; 3) loss of

23   the ability to make prison funds; and 4) loss of work time credits (Doc. #17 at 4). Plaintiff also

24   asserts he is forced to live in fear and is forced to violate the rules in order to stay alive (*Id.*).

25   Plaintiff contends he has no control over any aspect of his life, even using the bathroom (*Id.*)

26   ///

27

28                                                    21

### a.  *Yard Time*

The Ninth Circuit has recognized the deprivation of outdoor exercise as a violation of the Eighth Amendment where the inmate is confined to continuous and long-term segregation. *Keenan*, 83 F.3d at 1089.  However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.2d 557, 565 (9th Cir. 1997). The courts must look to the totality of the circumstances to determine whether outdoor exercise is required. *Toussaint*, 597 F. Supp. at 1412.

AR 516 indicates inmates receive some yard access on all levels and such access is used as an incentive and is increased as an inmate progresses through the level system.  Plaintiff has not alleged that he was denied all access to outdoor exercise, in the form of yard time, and Plaintiff has produced no evidence to demonstrate that any of the defendants were personally responsible for causing him to suffer a prolonged deprivation of yard time. Plaintiff simply alleges that Level IV is the most restrictive level so inmates on other levels get more yard time and inmates in the Level IV *program* get "more yard, more tier time …" than those inmates not in the program (Doc. #7 at 4).  Plaintiff has not alleged any medical effects resulting from his limited yard access.  Accordingly, Plaintiff has failed to meet the objective component of showing a sufficiently severe deprivation of outdoor exercise.

### b.  *Gym Access and Sports*

As previously explained, the Ninth Circuit has recognized the deprivation of *outdoor* exercise as a violation of the Eighth Amendment under certain circumstances; however, even "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.2d 557, 565 (9th Cir. 1997). Where an inmate is afforded adequate time for indoor exercise, outdoor exercise is not necessary. *Toussaint v. McCarthy*, 597 F. Supp. at 1412.  The reverse can also be inferred – where an inmate is afforded adequate time for outdoor exercise, indoor exercise is not necessary.

22

1   Plaintiff has not alleged the denial of all access to exercise or the denial of all outdoor

2   access, nor has he alleged any medical effects resulting from the loss of gym access and sports.

3   Accordingly, Plaintiff has failed to meet the objective component of showing a sufficiently

4   severe deprivation of exercise.

5   ### c.   *Prison Funds*

6   In *Hoptowit*, the Ninth Circuit held that "[i]dleness and the lack of programs are not

7   eighth amendment violations.  The lack of these programs simply does not amount to the

8   infliction of pain." 682 F.2d at 1254-1255.  The Ninth Circuit also recognizes that even if

9   idleness constituted cruel and unusual punishment, it does not follow that mandating work

10   programs is the appropriate remedy. *Toussaint*, 801 F.2d at 1107.

11   Since a prison inmate does not have an eighth amendment right to participate in a work

12   program, he has no Eighth Amendment right to earn prison funds.

13   ### d.   *Work Time Credits*

14   For the same reasons Plaintiff has no Eighth Amendment right to earn prison funds,

15   he also has no Eighth Amendment right to earn work time credits.

16   ### e.   *Fear and Control*

17   As previously explained, conditions of confinement may be restrictive and harsh.

18   *Rhodes*, 452 U.S. at 347.  The Constitution does not mandate comfortable prisons. *Id*. at 349.

19   Therefore, the routine discomfort inherent in the prison setting is inadequate to satisfy the

20   objective component of an Eighth Amendment inquiry.  On the other hand, prison officials

21   do have a duty to take reasonable steps to protect an inmate's safety. *Hoptowit*, 682 F.2d at

22   1250-1251. In order to establish a violation of this duty, Plaintiff must establish prison officials

23   were "deliberately indifferent" to serious threats to Plaintiff's safety. *Farmer*, 511 U.S. at 834.

24   Plaintiff asserts he is forced to live in a high degree of tension and fear, which results

25   in deep depression and little rest or sleep, and he asserts his anger and aggression levels are

26   always high and he is completely demoralized because he has no control over any aspect of

27

28   23

1    his life (Doc. #7 at 4).  Plaintiff contends these symptoms were caused by being forced to live

2    with inmates that came from disciplinary segregation and who openly threaten people and

3    inmates that came from other institutions who are equally threatening (Doc. #17 at 8).

4           Plaintiff's allegations do not satisfy the objective component of an Eighth Amendment

5    inquiry.  Plaintiff has not alleged any specific threats to his safety; therefore, Defendants

6    cannot be deliberately indifferent to a serious risk of which they are not aware. *Id.*; *Gibson*

7    *v. County of Washoe*, 290 F.3d 1175, 1187-1188 (9th Cir. 2002). Plaintiff has failed to establish

8    prison officials acted deliberately indifferent to a substantial risk of serious harm to Plaintiff,

9    thus, he has failed to satisfy the objective component of showing a sufficiently serious

10   deprivation of his right to safety.

11          For the foregoing reasons, Plaintiff has failed to state a claim for cruel and unusual

12   punishment; therefore, Defendant's request to dismiss Plaintiff's Eighth Amendment claim

13   (Count II) should be **GRANTED.**

14   **D.    Conclusion**

15          For the reasons set forth above, Defendants' Motion to Dismiss should be **GRANTED**

16   **IN PART and DENIED IN PART** (Doc. #12) consistent with the terms of this Report and

17   Recommendation.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28
                                                    24

## <u>RECOMMENDATION</u>

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Order to Show Cause for a Preliminary Injunction and a Temporary Retraining Order (Doc. #23).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Ex Parte Request for Immediate Temporary Restraining Order and Preliminary Injunction (Doc. #28).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss (Doc. #12) as follows:

1)   Defendants' request to dismiss Defendant Skolnik from this suit should be **DENIED.**

2)   Defendants' request to dismiss Defendants Palmer, LeGrand and Belanger, sued in their official capacities, should be **GRANTED**.

3)   Defendants' request to dismiss Defendants based on the theory of respondeat superior should be **DENIED**.

4)   Defendants' request to dismiss Plaintiff's Due Process claim (Count I) should be **GRANTED**.

5)   Defendants' request to dismiss Plaintiff's complaint based on the constitutionality of the level system should be **DENIED**.

6)   Plaintiff's request for injunctive relief in the form of abolishing NDOC's level system should be **DENIED**.

7)   Defendants' request to dismiss Plaintiff's retaliation claim (Count III) should be **DENIED**.

8)   Defendants' request to dismiss Plaintiff's Eighth Amendment claim for cruel and unusual punishment (Count II) should be **GRANTED**.

The parties should be aware of the following:

1.   That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   December 21, 2007.

_____
UNITED STATES MAGISTRATE JUDGE